IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE


Civil Case No. 13-cv-03283-LTB

BRIAN REYNOLDS,

　　　　　Plaintiff,

v.

HENDERSON & LYMAN, and
DOUGLAS E. AREND,

　　　　　Defendants.
_____

ORDER
_____

This matter is before me on Defendants Henderson & Lyman and Douglas E. Arend's

(collectively, "H&L") Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative,

to Transfer Venue [Doc #13]. In its motion, H&L moves to dismiss this legal malpractice suit

for lack of personal jurisdiction. Alternatively, H&L moves to transfer venue to the United

States District Court for the Northern District of Illinois ("Northern District of Illinois") pursuant

to 28 U.S.C. § 1404. I have considered the motion and all related pleadings and exhibits. Oral

argument would not materially assist me in determining the motion. For the following reasons, I

DENY the motion to dismiss, GRANT the motion to transfer pursuant to 28 U.S.C. § 1631 rather

than 28 U.S.C. § 1404, and TRANSFER this case to the Northern District of Illinois.

**I. Factual Background**

Unless otherwise noted, the following facts are undisputed. Plaintiff Bryan Reynolds is a

Colorado resident. B. Reynolds Aff. ¶ 1 [Doc #19-1]. Mr. Reynolds co-founded three Colorado

limited liability companies that operated as broker-dealers: Paradigm Capital Markets LLC

("Paradigm"), Arjent Capital Markets LLC, and Chicago Trading Partners U.S. LLC.  *Id.* ¶ 3.

Mr. Reynolds was the managing member of these companies at all relevant times.  *Id.* ¶ 4.

Defendant Henderson & Lyman is a law firm organized as an Illinois general partnership with its

principal place of business in Chicago, Illinois.  D. Arend Aff. ¶ 1 [Doc #13, Ex. A].  Defendant

Douglas Arend is a partner of the firm and an Illinois resident.  *Id.* ¶ 2.

H&L began advising Paradigm in 2006 and the other two broker-dealers (collectively,

"the LLCs") at some unspecified time thereafter.  *Id.* ¶¶ 9-11.  H&L did not solicit the LLCs'

business.  Rather, one of the LLCs' co-founders, Spencer Montgomery, approached Mr. Arend

about providing legal advice related to Paradigm's broker-dealer operations in Chicago, which

Paradigm operated in association with the Chicago Board Options Exchange and the National

Futures Association there.  D. Arend Aff. ¶ 12 [Doc #13, Ex. A]; J. Henderson Aff. ¶ 10 [Doc

#13, Ex. B].  Specifically, Mr. Arend explains that "H&L was retained to assist in forming

certain investment vehicles which I understood would be used for raising funds in a joint back

office agreement that [Mr. Montgomery] already had in place with Goldman Sachs Execution

and Clearing."  D. Arend Aff. ¶ 9 [Doc #13, Ex. A].  H&L's representation continued through

2009 (according to H&L) or 2010 (according to Mr. Reynolds).  B. Reynolds Aff. ¶ 6 [Doc #19-

1]; Mot. at 1 [Doc #13].

In 2012, the U.S. Commodity Futures Trading Commission ("CFTC") sued Mr. Reynolds

in federal court in New York, claiming that he had defrauded investors by issuing account

statements for certain commodity pools that failed to reflect debits in the LLCs' capital accounts.

Compl. ¶ 20 [Doc #1].  Mr. Reynolds settled that lawsuit in 2013.  *Id.* ¶ 21.  Mr. Reynolds (but

not the LLCs) now brings this suit against H&L for negligence, breach of contract, and breach of fiduciary duty. Among other things, Mr. Reynolds alleges that H&L improperly advised him that it was unnecessary to disclose certain debits in the LLCs' capital accounts. *Id.* ¶ 23(c).

In its motion, H&L points out that it did not reach out to Colorado to solicit the business at issue here; rather, the LLCs approached H&L, as described above. Further, H&L was retained to advise the LLCs regarding their broker-dealer operations in Chicago, as is also described above. H&L performed all of its work for the LLCs in Illinois; nobody from the firm traveled to Colorado in connection with the representation. D. Arend Aff. ¶ 13 [Doc #13, Ex. A]; J. Henderson Aff. ¶ 12 [Doc #13, Ex. B]. The firm does not have an office, employees, or property in Colorado; it does not maintain accounts or pay taxes in Colorado; and it does not advertise or solicit business in Colorado. J. Henderson Aff. ¶¶ 4-7 [Doc #13, Ex. B]. Mr. Arend likewise owns no property in Colorado; does not maintain accounts or pay taxes in Colorado; is not licensed to practice law in Colorado; has never appeared in a Colorado court; and has never advertised or solicited business in Colorado. D. Arend Aff. ¶¶ 4-7 [Doc #13, Ex. A].

Mr. Reynolds does not dispute these facts. He says the LLCs were "based" in Colorado but does not deny that H&L performed its legal work in Illinois and in support of the LLCs' broker-dealer operations there. B. Reynolds Aff. ¶ 3 [Doc #19-1]. Mr. Reynolds does not identify any matters in Colorado—such as litigations or transactions—with respect to which H&L represented the LLCs. Rather, Mr. Reynolds focuses on the fact that he and certain other representatives of the LLCs were in Colorado when H&L communicated with them. Mr. Reynolds spoke on the phone with Mr. Arend "around 10 times," "corresponded via email around 10 times," and "was courtesy copied on numerous other emails" throughout the

3

representation. *Id.* ¶ 7. Mr. Reynolds was in Colorado when all of these communications took place. *Id.* Mr. Reynolds also identifies "numerous" other email and phone conversations that Mr. Arend had with other people associated with the LLCs, including Mr. Montgomery, who were in Colorado during the conversations. *Id.* ¶¶ 8-9. Finally, Mr. Reynolds argues that H&L "collected substantial fees paid by the Colorado companies" and that "the effects of [H&L's] representation were all felt more in Colorado than anywhere else." Pl.'s Opp'n at 7, 10 [Doc #19].

The parties dispute whether Mr. Reynolds himself was H&L's client. *Id.* ¶¶ 8-11, 14; B. Reynolds Aff. ¶¶ 5-6 [Doc #19-1]. They also dispute whether, in addition to the LLCs, certain other Colorado companies that Mr. Reynolds co-founded were H&L's clients. Reply at 1-2 [Doc #22]. For purposes of resolving the instant motion, however, these disputes do not appear to matter.

## II. Motion to Dismiss

### A. Burden of Proof

A defendant may move to dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). When a defendant does so, the plaintiff has the burden of establishing that the court has personal jurisdiction over the defendant. *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). Where the court does not conduct an evidentiary hearing, as here, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id.* (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998)). The court must "resolve all factual disputes in favor of the plaintiff in determining whether plaintiff has made a prima facie showing." *Benton*

4

*v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004) (quoting *Far W. Capital, Inc. v.*

*Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995)).  But only "'well pled facts,'" as opposed to

"conclusory allegations, must be accepted as true.'"  *Wenz v. Memery Crystal*, 55 F.3d 1503,

1505 (10th Cir. 1995) (citing *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518,

1523 (10th Cir. 1987)).

## B.  Personal Jurisdiction in Diversity Cases

Federal courts sitting in diversity—which is the only basis for jurisdiction alleged here,

*see* Compl. ¶ 5—may only exercise personal jurisdiction over a nonresident defendant where

both state law and federal due process are satisfied.  *See, e.g., Doering v. Copper Mountain, Inc.*,

259 F.3d 1202, 1209 (10th Cir. 2001); *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990).

"Colorado's long arm statute is coextensive with constitutional limitations imposed by the due

process clause.  Therefore, if jurisdiction is consistent with the due process clause, Colorado's

long arm statute authorizes jurisdiction over a nonresident defendant."  *Benton*, 375 F.3d at 1075

(quoting *Day v. Snowmass Stables, Inc.*, 810 F. Supp. 289, 291 (D. Colo 1993)); *accord Keefe v.*

*Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270 (Colo. 2002) (citing Colo. Rev. Stat.

§§ 13–1–124(1)(a)–(b) (2007)).  Accordingly, the only question here is whether exercising

personal jurisdiction over H&L comports with due process, a question of federal law.  *Nat'l Bus.*

*Brokers, Ltd. v. Jim Williamson Prods., Inc.,* 115 F. Supp. 2d 1250, 1253 (D. Colo. 2000)

("Federal law, not state law, guides the due process analysis."), *aff'd,* 16 F. App'x 959 (10th Cir.

2001).

"The Supreme Court has held that, to exercise jurisdiction in harmony with due process,

defendants must have 'minimum contacts' with the forum state, such that having to defend a

5

lawsuit there would not 'offend traditional notions of fair play and substantial justice.'"

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Personal jurisdiction may be either

general or specific.  Mr. Reynolds only argues for specific personal jurisdiction, or "jurisdiction

specific to this dispute."  *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).  To

determine whether the defendant has minimum contacts with the forum state such that the court

may exercise specific personal jurisdiction, a court must ask "(1) whether the defendant

purposefully directed its activities at residents of the forum state; [and] (2) whether the plaintiff's

injury arose from those purposefully directed activities."  *Id.*; *Dudnikov*, 514 F.3d at 1071.  If the

court determines that minimum contacts exist, the court then asks whether exercising jurisdiction

would offend traditional notions of fair play and substantial justice.  *Id.*

## C.  The Court Does Not Have Personal Jurisdiction Over H&L

Applying these standards, I hold that the Court does not have personal jurisdiction over

H&L because H&L did not purposefully direct its activities at residents of Colorado.  I rely on

the Tenth Circuit's recent opinion in *Newsome,* 722 F.3d 1257, in reaching this conclusion.

There, the court of appeals held that federal due process did not allow a federal district court in

Oklahoma to exercise personal jurisdiction over a Canadian law firm hired by a corporation that

operated exclusively in Oklahoma.  *Id.* at 1279.  The law firm facilitated a transaction that was

"negotiated, arranged, closed [and] documented" outside of Oklahoma except for certain liens on

the corporation's Oklahoma property that the law firm arranged.  *Id.*  The court held that the

district court did not have personal jurisdiction over the law firm, explaining that "an out-of-state

attorney working from out-of-state on an out-of-state matter does not purposefully avail himself

of the client's home forum's laws and privileges, at least not without some evidence that the attorney reached out to the client's home forum to solicit the client's business." *Id.* at 1280-81.

Here, as in *Newsome*, the defendant attorneys did not reach out to forum residents to solicit business; rather, the LLCs came to H&L. It is undisputed that H&L's legal advice centered on the LLCs' broker-dealer operations in Illinois. Mr. Reynolds has not identified any work H&L performed in connection with litigation, transactions, or other interests the LLCs may have had in Colorado. Mr. Reynolds also has not identified any work that Mr. Arend or anyone else at the firm performed for the LLCs while physically present in Colorado. The argument that the law firm purposefully directed its activities at the forum state is actually weaker here than in *Newsome,* where the law firm facilitated the placement of liens on property in the forum state. *Id.* at 1279. It also bears noting that Henderson & Lyman does not have any other connections to Colorado. It has no employees, property, or accounts in Colorado. It also does not advertise, solicit business, or pay taxes here. The same is true of Mr. Arend; he is not licensed to practice law in Colorado, has never appeared in a Colorado court, and has never advertised or solicited business in Colorado.

The *Newsome* court specifically rejected arguments similar to Mr. Reynolds' three main arguments here. First, Mr. Reynolds relies on the frequent communications between H&L and representatives of the LLCs in Colorado. But *Newsome* explained that "communications that make up an active attorney-client relationship" are not "the sort of repeated, purposeful contacts with the client's home forum sufficient to establish personal jurisdiction." *Id.* at 1280. Second, Mr. Reynolds states that H&L "collected substantial fees paid by the Colorado companies." But the *Newsome* court was not persuaded by the fact that the defendant law firm received payments

for the work in question from the Oklahoma corporation's bank accounts. 722 F.3d at 1280-81.

Finally, Mr. Reynolds argues that the effects of H&L's alleged malpractice were felt in Colorado more than anywhere else. Yet "even though a client may feel the effects of the lawyer's misdeeds in the client's home forum, the client cannot sue the lawyer there on that account alone." *Id.* at 1280; *see also Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

Other courts have reached the same conclusion on similar facts. *See, e.g., Sawtelle v. Farrell*, 70 F.3d 1381, 1391-94 (1st Cir. 1995) (New Hampshire federal court had no personal jurisdiction over Florida and Virginia attorneys representing New Hampshire residents in Florida litigation even where attorneys transmitted legal advice to New Hampshire by phone and mail); *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226-27 (8th Cir. 1987) (South Dakota federal court had no personal jurisdiction over New York based law firm where firm did not seek out client's business and represented client in "litigation taking place wholly outside South Dakota" despite "numerous phone calls between New York and South Dakota, the use of courier services (at [the law firm's] expense), monthly billings mailed to South Dakota, and checks paid by a South Dakota bank"); *see also CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz*, No. 13-2547, 2014 WL 4059761 (D. Kan. Aug. 14, 2014) (federal court in Kansas applying *Newsome* and concluding that it had no personal jurisdiction over New York law firm hired to help Kansas company resist hostile takeover bid where "out-of-state lawyers neither solicited business from the plaintiff nor performed services in Kansas" but merely communicated with client in Kansas regarding representation).

Mr. Reynolds correctly notes that the Colorado Supreme Court has held that Colorado courts could exercise personal jurisdiction on materially indistinguishable facts. *See, e.g., Keefe*, 40 P.3d at 1372-73 (court had personal jurisdiction over New York law firm solicited by Colorado client's representative to handle single lawsuit in New York because law firm communicated with client to "advis[e] about the progress of the suit" and lawyer's alleged malpractice had "potential consequences for [the client's] assets in [Colorado]"); *Scheuer v. District Ct.*, 684 P.2d 249, 250-52 (Colo. 1984) (court had personal jurisdiction over New Mexico attorney solicited by Colorado client to represent client with respect to interests in New Mexico because attorney placed phone calls to client in Colorado, received funds sent from client in Colorado, and mailed billing statements and files to client in Colorado). *Newsome*, however, specifically rejected *Keefe* and other cases that it characterized as "show[ing] no hesitation to exercise jurisdiction over out-of-state attorneys." 722 F.3d at 1280. I am bound by *Newsome*'s holding regarding the limits of federal due process, not the contradictory decisions of the Colorado Supreme Court. *See, e.g., Sher v. Johnson*, 911 F.2d 1357, 1363 n.2 (9th Cir. 1990) ("[W]e are not bound by the decisions of [state] courts; the ultimate question here is one of federal constitutional law.").

In sum, Mr. Reynolds has not shown that H&L was anything other than an "out-of-state [law firm] working from out-of-state on an out-of-state matter," *Newsome,* 722 F.3d at 1280-81, so I cannot conclude that H&L purposefully directed its activities to Colorado. Accordingly, I do not reach the question of whether exercising jurisdiction would offend traditional notions of fair play and substantial justice, *id.* at 1271, and I conclude that the Court does not have personal jurisdiction over H&L. As discussed in the next section, however, the proper course is not to

9

dismiss this case but to transfer it to the Northern District of Illinois.

### III.  Motion to Transfer Venue

#### A.  *Transfer of Venue Where Court Lacks Personal Jurisdiction*

H&L's alternative argument is that I should transfer this case to the Northern District of

Illinois pursuant to 28 U.S.C. § 1404(a) based on the convenience of the parties and witnesses

and the interest of justice.  Mr. Reynolds agrees that I should do so if I conclude that the Court

does not have personal jurisdiction over H&L, as I have done.

Where the transferor court lacks personal jurisdiction, however, the "correct course" is to

consider transferring the case pursuant to 28 U.S.C. § 1631, rather than 28 U.S.C. § 1404(a).

*Ross v. Colorado Outwards Bound School, Inc.*, 822 F.2d 1524, 1527 (10th Cir. 1987); *see also*

*Trujillo v. Williams*, 465 F.3d 1210, 1222-23 (10th Cir. 2006) (noting that a "court may *sua*

*sponte* cure jurisdictional and venue defects by transferring a suit under [Section] 1631").

Section 1631 provides that if the "court finds that there is a want of jurisdiction, the court shall,

if it is in the interest of justice, transfer such action or appeal to any other such court in which the

action or appeal could have been brought at the time it was filed."

#### B.  *Transfer to the Northern District of Illinois Under 28 U.S.C. § 1631 Is Warranted*

I conclude that transfer to the Northern District of Illinois is appropriate under Section

1631 because this action could have been brought there when it was filed and transfer is in the

interest of justice.

##### 1.  *This Case Could Have Been Brought in the Northern District of Illinois*

This case could have been brought in the Northern District of Illinois at the time it was

filed, on December 4, 2013, because both personal jurisdiction and venue were proper there at

that time.  That court would have had general personal jurisdiction over Henderson & Lyman at

the time of filing because, among other reasons, the firm was and is an Illinois general

partnership with its principal place of business in Chicago.  Compl. ¶ 2 [Doc #1]; J. Henderson

Aff. ¶ 1 [Doc #13, Ex. B]; *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("With respect to

a corporation, the place of incorporation and principal place of business are "paradig[m] . . .

bases for general jurisdiction.") (internal citations omitted).  That court would have had general

personal jurisdiction over Mr. Arend at the time of filing because it is undisputed that he was and

is Illinois resident.  Compl. ¶ 3; D. Arend Aff. ¶ 2 [Doc #13, Ex. A].

Venue also would have been proper in the Northern District of Illinois at the time of

filing.  Venue is proper in any "judicial district in which any defendant resides, if all defendants

are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  Here, all

defendants were residents of Illinois, the state in which the Northern District of Illinois is

located, at the time of filing.  Henderson & Lyman was a "resident" of Illinois at the time of

filing under the venue statute because it was subject to the Northern District of Illinois'

"personal jurisdiction with respect to the civil action in question," as established above.  *Id.* §

1391(c)(2).

With respect to Mr. Arend, it is undisputed that he was an Illinois resident at the time of filing, as

noted above.

### 2. *Transfer Is in the Interest of Justice*

It is in the interest of justice to transfer this case rather than dismiss it.  "Factors

considered in deciding whether a transfer is in the interest of justice include whether the claims

would be time barred if filed anew in the proper forum, whether the claims alleged are likely to

11

have merit, and whether the claims were filed in good faith or if, on the other hand, it was clear

at the time of filing that the court lacked the requisite jurisdiction." *In re Cline*, 531 F.3d 1249,

1251 (10th Cir. 2008).  To make these determinations, it is proper to "consider the consequences

of a transfer by taking 'a peek at the merits' to avoid raising false hopes and wasting judicial

resources that would result from transferring a case which is clearly doomed." *Haugh v. Booker*,

210 F.3d 1147, 1150 (10th Cir. 2000) (internal citation omitted).  I am also mindful that

"[n]ormally transfer will be in the interest of justice because normally dismissal of an action that

could be brought elsewhere is 'time-consuming and justice-defeating.'" *Miller v. Hambrick*, 905

F.2d 259, 262 (9th Cir. 1990) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)).

With respect to the first factor, the limited record before me suggests that Mr. Reynolds'

claims may be time barred if filed anew in the Northern District of Illinois.  Under Illinois law,

claims "against an attorney arising out of an act or omission in the performance of professional

services must be commenced within 2 years from the time the person bringing the action knew

or reasonably should have known of the injury for which damages are sought," but no "more

than 6 years after the date on which the act or omission occurred."  735 Ill. Comp. Stat.

5/13-214.3(b) & (c) (West 2010); *800 S. Wells Commercial, LLC v. Horwood Marcus & Berk

Chartered*, 995 N.E.2d 472, 476 (Ill. App. 2013).  Mr. Reynolds alleges legal malpractice

resulting in the CFTC's suit against him on March 13, 2012.  By way of example, to the extent

his claims accrued on that date—and I express no view as to whether they did—they may be

time-barred if brought now.

Turning to the second factor, at this juncture I cannot say whether it is "likely" that Mr.

Reynolds' claims have merit.  Based on the papers filed to date, it appears the viability of Mr.

Reynolds' claims may turn on whether he can prove he was H&L's client or otherwise has standing to sue H&L. As discovery has not begun, this issue is unclear. Therefore, I do not give the second factor any weight. As to the final factor, I find that Mr. Reynolds filed his lawsuit in this Court in good faith. As discussed above, the Tenth Circuit's recent holding in *Newsome* conflicts with earlier decisions of the Colorado Supreme Court. A reasonable litigant could have believed that this Court had personal jurisdiction over H&L. Balancing these factors, and in consideration of the judicial resources saved by transferring this case instead of dismissing it, I conclude that the interest of justice is served by transferring this case to the Northern District of Illinois.

## IV. Conclusion

For the foregoing reasons, H&L's motion to dismiss is DENIED, its motion to transfer is GRANTED pursuant to 28 U.S.C. § 1631 rather than 28 U.S.C. § 1404, and this case is TRANSFERRED to the United States District Court for the Northern District of Illinois.

Dated: October __14__, 2014 in Denver, Colorado.

BY THE COURT:

__s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE