29484.00X5J7                           1238286                           #412

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BRIAN REYNOLDS,                              )
                  Plaintiff,      )
        v.                              )     No.:   14-cv-7995
HENDERSON & LYMAN,                           )
DOUGLAS AREND,                               )     Judge Robert M. Dow, Jr.
             Defendants.     )

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Douglas Arend ("Arend") and Henderson & Lyman ("H&L"), by and through their counsel, Christina Harrison of Williams Montgomery & John Ltd., in support of their motion for summary judgment against plaintiff Brian Reynolds ("Reynolds") state as follows:

### INTRODUCTION

Arend and H&L provided legal services to related Limited Liability Companies ("LLC"). Reynolds was a managing and limited member of some of those LLCs. Reynolds, as an individual, is asserting professional negligence, contract and fiduciary claims against defendants arising out of allegedly faulty legal services that they provided for the LLCs. Plaintiff's claims fail because H&L never formed an attorney-client, contractual or fiduciary relationship with Reynolds.

Defendants provided legal services to the LLCs; not individual members of the LLCs. Reynolds' own testimony confirms that he was not defendants' client; did not enter into a contract for legal services with defendants; and never had a fiduciary relationship with defendants. Consequently, defendants are entitled to judgment in their favor as a matter of law on plaintiff's professional negligence, contract, and fiduciary claims. Defendants are also

entitled to judgment on the fiduciary and contract claims as a matter of law because the claims are duplicative of the malpractice claim.

## STATEMENT OF MATERIAL FACTS

### I.    Background.

In 2005, Spencer Montgomery, Reynolds and others entered into a joint back office[1] ("JBO") arrangement with Goldman Sachs Execution and Clearing ("GSEC"). (SOF[2] at ¶7). A series of LLCs were then formed to take advantage of the JBO agreement with GSEC:

| LLC | Function |
|---|---|
| Paradigm Capital Markets LLC | Broker-dealer |
| Paradigm Capital Markets Fund LLC | Pool to raise funds |
| Paradigm Capital Futures LLC | Operator of the pool |

| | |
|---|---|
| Argent Capital Markets LLC | Broker-dealer |
| Argent Capital Markets Fund LLC | Pool to raise funds |
| Argent Capital Advisors LLC | Operator of the pool |

| | |
|---|---|
| Chicago Trading Managers LLC | Operator of the pools |
| Chicago Trading Partners US LLC | US pool to raise funds |
| Chicago Trading Partners Int. LLC | Offshore pool to raise funds |

(SOF at ¶¶8-9, 13, 17). All of these LLCs had ceased operation by 2010. (SOF at ¶¶12, 16, 20).

Reynolds was a managing and/or limited member of the following LLCs: Paradigm Capital Markets LLC; Arjent Capital Markets LLC; and Chicago Trading Managers LLC. (SOF at ¶¶10, 14, 18). Reynolds and Montgomery handled the day-to-day and administrative operations of these LLCs. (SOF at ¶¶11, 15, 19).

---

[1] A JBO is an arrangement involving two broker-dealers, wherein one broker-dealer provides clearing services for trades by a second broker-dealer. This arrangement allows the second broker-dealer (usually a smaller entity) to trade free of certain credit restrictions imposed by federal regulations, or in other words, to employ greater leverage.

[2] SOF refers to defendants Local Rule 56.1 Statement of Material Facts.

H&L was a law firm that provided legal services in various areas, including financial services. (SOF at ¶2). Arend was a partner at H&L. (SOF at ¶4). In 2006, H&L was retained by the broker-dealer Paradigm Capital Markets, LLC to perform legal services for it, like preparing offering documents. (SOF at ¶25). Defendants provided similar legal services for two affiliated LLCs, Arjent Capital Markets LLC and Chicago Trading Partners US LLC. (SOF at ¶26).

In 2012, the Commodity Futures Trading Commission ("CFTC") filed a complaint against Reynolds, Montgomery, Chicago Trading Managers, LLC, and Arjent Capital Markets LLC. (SOF at ¶21). Reynolds believes that allegedly faulty advice from H&L led to the CFTC action. (SOF at ¶22). In March of 2013, a Judgment and Consent Order was entered in the CFTC action that permanently enjoined Reynolds from trading or working at companies that trade futures. (SOF at ¶23).

## II. Defendants had no attorney-client, contractual or fiduciary relationship with Reynolds.

Defendants provided legal services to certain LLCs. (SOF at ¶¶24-26). All of the legal fees for defendants' work was invoiced to and paid by those LLCs. (SOF at ¶28). H&L never provided legal services to Reynolds. (SOF at ¶31). No attorney from H&L ever met with or indicated to Reynolds that they were personally representing him. (SOF at ¶¶32-33). While some H&L attorneys did speak with Reynolds on the phone in the course of providing legal services to certain LLCs, they spoke to Reynolds as a representative of those LLCs. (SOF at ¶27). H&L never represented Reynolds; was never paid by Reynolds; and never promised to provide Reynolds personally with legal services. (SOF at ¶¶30-31, 34).

III.    **Plaintiff's claims against defendants.**

Reynolds asserts three claims against defendants arising out of Arend's[3] conduct: professional negligence, breach of contract, and breach of fiduciary duty.  (SOF at ¶35).  According to Reynolds, all three claims arise out of the legal services that Arend provided some of the LLCs:

> Q.      . . . Are all of the claims against Doug Arend, are they based on the legal services he provided to the Paradigm, the Arjent, and the Chicago Trading entities?
> A.      Yes.

(SOF at ¶37).  Plaintiff asserts the same factual background for and seeks the same damages in all three claims.  (SOF at ¶38).

## ARGUMENT

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 563 (7th Cir. 2009)(quoting Fed. R. Civ. P 56(c)).  "In determining summary judgment motions, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'"  *Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 830 (N.D. Ill. 2009)(*quoting Scott v. Harris*, 550 U.S. 372 (2007)).  "To avoid summary judgment, [a nonmovant] must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists - he "must set out specific facts that demonstrate a genuine issue of triable fact."  *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001).

---

[3] H&L are a named defendant based solely on their alleged vicarious liability for the acts of Arend.  (SOF at ¶36).

I.   **Defendants are entitled to judgment as a matter of law on all three claims.**

A.   **There is no genuine issue as to the lack of an attorney-client relationship between defendants and plaintiff and, therefore, that defendants are entitled to judgment as a matter of law on the malpractice claim.**

In order to establish a legal malpractice claim, a plaintiff must prove (1) the existence of an attorney-client relationship, (2) a breach of duty arising from that relationship, (3) causation, and (4) damages. *Alper v. Altheimer & Gray*, 257 F.3d 680, 684 (7th Cir. (Ill.) 2001). The question of whether an attorney owes a duty is one of law that a court "answers in the first instance." *Blue Water Partners, Inc. v. Edwin, Mason, Foley & Lardner*, 975 N.E.2d 284, 294 (Ill. App. Ct. 2012). Thus, Reynolds' professional negligence claim is only viable if Reynolds can establish the existence of an attorney-client relationship between the parties that gave rise to a duty of care on the part of defendants. *Blue Water Partners, Inc.*, 975 N.E.2d at 294; *see also Kopka v. Kamensky & Rubenstein*, 821 N.E.2d 719, 727 (Ill. App. Ct. 2004)("An attorney can be liable for malpractice only to one to whom the attorney has a duty.").

Plaintiff's claim is not viable because there is no evidence to support the existence of an attorney-client relationship between the parties. Defendants provided legal services to and were paid by the LLCs. H&L never provided legal services to or received money from Reynolds. Reynolds himself confirmed that no attorneys from H&L indicated to Reynolds that they were personally representing him. Finally, while some H&L attorneys did speak with Reynolds on the phone, they spoke to Reynolds as a representative of the LLCs in the course of providing legal services to those LLCs.

A review of the *Blue Water Partners* decision and the undisputed evidence in this matter confirms that Reynolds was not a client of the defendants as a matter of law. In *Blue Water Partners*, Fane Lozman, one of two shareholders and an officer in the corporation Blue Water

5

Partners, Inc. (BWP), claimed that BWP's corporate counsel, Foley & Lardner, also acted as Lozman's attorney. *Id.* at 287, 291. The *Blue Water Partners* Court found that the following deposition testimony was "unequivocal evidence that no attorney-client relationship ever arose" between Lozman and Foley & Lardner:

> "Q.  * * * Did you at any time ever retain Foley & Lardner as your attorney, personally, you, Fane Lozman?
> A.  No.
> Q.  Did anyone from Foley & Lardner ever say anything to you that indicated to you that they believed you were being personally represented by Foley & Lardner?
> A.  No.
> Q.  You never made any payments to Foley & Lardner personally for any services. Correct?
> A.  *Foley & Lardner were Blue Water Partners' corporate attorney. They weren't my personal attorney.*"

*Blue Water Partners*, 975 N.E.2d at 295 (emphasis added in original). The court found that this deposition testimony established as a matter of law that Lozman was not Foley & Lardner's client. *Id.* at 296. The court then affirmed the grant of summary judgment in favor of Foley & Lardner on the malpractice claim because the defendant attorneys owed no duty of care to Lozman. *Id.*

Reynolds' deposition testimony provides the same unequivocal evidence found in *Blue Water Partners* that no attorney-client relationship arose between Reynolds and H&L:

- *Reynolds did not retain defendants as his counsel personally:*

  Q.  Did you at any time retain Henderson & Lyman as your attorney personally?
  A.  No.

(SOF at Ex. D, 95:7-9).

- *No one from H&L indicated to Reynolds that they believed that they were representing Reynolds:*

  Q. Okay. Did anyone from Henderson & Lyman ever say anything to you that indicated to you that they believed that they were personally representing you?
  A. Representing me personally?
  Q. Yes.
  A. No.

  * * *

  Q. Did anyone from Henderson & Lyman do any work for you personally? Did anybody do a will, a trust, or something else for you personally from Henderson & Lyman?
  A. No.

(*Id.* at 95:10-15, 97:2-6).

- *Reynolds never personally made any payments for legal services to H&L:*

  Q. . . . Were the fees for Henderson & Lyman's work listed as a business expense for Paradigm, Arjent, and Chicago Trading entities?
  A. Yes.

  * * *

  Q. Okay. Do you recall how Henderson & Lyman's fees were paid?
  A. We would get a bill, and we would, I believe, cut them a check or wire the money. I believe it was a check.
  Q. . . . The payor would be either a Paradigm entity or an Arjent entity or a Chicago entity?
  A. Yes.

  * * *

  Q. . . . Did you, Brian Reynolds, ever pay Henderson & Lyman personally?
  A. No.

(*Id.* at 89:17-20, 91:11-19, 94:24-95:2).

- *Reynolds identified H&L as counsel for certain LLCs:*

| "Q. Did the Paradigm entities have an attorney or counsel?<br>A. Yes.<br>Q. Who were . . . they?<br>A. Henderson & Lyman." | "Q. . . . Did the Arjent entities have counsel?<br>A. Yes.<br>Q. Who was it?<br>A. Henderson & Lyman." | "Q. . . . Were there counsel for the Chicago Trading entities?<br>A. Yes.<br>Q. Who was it?<br>A. It was Henderson & Lyman . . ." |
|---|---|---|

(*Id.* at 89:17-20, 91:11-19, 94:22-95:2). This testimony from Reynolds establishes as a matter of law that Reynolds was not defendants' client. *Blue Water Partners*, 975 N.E.2d at 296. Therefore, this Court should follow *Blue Water Partners* and enter summary judgment in favor of defendant attorneys on the malpractice claim because defendants owed no duty of care to Reynolds. *Id.* at 296.

In the face of the unequivocal evidence that no direct attorney-client relationship existed between the parties, defendants anticipate that Reynolds will argue an attorney-client relationship arose because Reynolds was a managing member of some of the LLCs that defendants represented. The fact that Reynolds was a member of those LLCs, "is of no moment because the attorney for a corporate client owes his duty to the corporate entity, not its individual shareholders, officers or directors." *Majumdar v. Lurie*, 653 N.E.2d 915, 918 (Ill. App. Ct. 1995).

Under Illinois law, an LLC is a formally recognized business legal entity that is separate and apart from its members. 805 ILCS §180/1-1 et. seq.; *Peabody-Waterside Dev., LLC v. Islands of Waterside, LLC*, 995 N.E.2d 1021, 1024 (Ill. App. Ct. 2013)("A limited liability company (LLC) is a legal entity distinct from its members."). Consequently, the law holds that the rendering of professional services to an LLC does not create an attorney-client relationship between the attorney and the LLC members. *See, e.g.,* ILL. R. PROF. CONDUCT 1.13(a)("A lawyer employed or retained by an organization represents the organization"); *Blue Water Partners*, 975 N.E.2d at 295 ("A claim that the third party is a shareholder in the corporation is by itself insufficient to establish a duty on the part of the attorney for the corporation in favor of the shareholder"); *Blanton v. Prins*, 938 So.2d 847, 852 (Miss. App. Ct. 2005)(holding that members of LLC had no attorney-client relationship with the LLC's

attorney and therefore could not bring a malpractice action). Thus, the mere fact that Reynolds was a member of certain LLCs that H&L represented did not create an attorney-client relationship between Reynolds and defendants.

Defendants had an attorney-client relationship with certain LLCs. Defendants did not have an attorney-client relationship with individual members of those LLCs. As a result, defendants are entitled to judgment on the malpractice claim because they did not owe a professional duty to Reynolds as a matter of law. *Majumdar*, 653 N.E.2d at 918 (finding that "[a]bsent an attorney/client relationship, the defendants [attorneys] owed no duty to" a shareholder, officer and director of a client).

**B.    There is no genuine issue that no contract for legal services existed between defendants and plaintiff and, therefore, that defendants are entitled to judgment as a matter of law on the contract claim.**

A viable breach-of-contract claim requires proof of the existence of a contract between the parties. *Hammarquist v. United Cont'l Holdings, Inc.*, 809 F.3d 946, 949 (7th Cir. (Ill.) 2016). To survive summary judgment, plaintiff "must show evidence sufficient to establish every element that is essential to" his breach-of-contract claim. *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 349 (7th Cir. 2015). Here, plaintiff cannot meet his burden to prove the existence of a contract.

Plaintiff's breach-of-contract claim asserts, with no details, that "defendants promised to provide Plaintiff with legal services specific to complying with all laws and regulations concerning" certain trading issues. (SOF at ¶39). Plaintiff has produced no written contracts, written agreements, or written promises between defendants and Reynolds. (SOF at ¶41). Moreover, at his deposition, Reynolds affirmatively testified that defendants never made any promises to plaintiff:

> Q.    Okay. All right. The second claim [in the complaint] is for . . . breach of contract. And Paragraph 27 says: "Defendants promised to provide plaintiff with legal services."  Beyond our discussion of the work that Henderson & Lyman and Doug Arend did for the Paradigm, Chicago Trading, and Arjent entities, was there any promise made to you by a Henderson & Lyman attorney with regard to legal services?
>
> A.    Me personally?
>
> Q.    Yes.
>
> A.    No.

(SOF at Ex. D, 99:7-19).  This testimony confirms that there is no genuine issue of material fact that defendants did not enter into a contract with Reynolds to provide legal services.   Thus, defendants are entitled to summary judgment as a matter of law on plaintiff's contract claim.

**C.    There is no genuine issue as to the lack of a fiduciary relationship between defendants and plaintiff and, therefore, that defendants are entitled to judgment as a matter of law on the fiduciary claim.**

Reynolds did not have a fiduciary relationship with H&L or Arend.  The fiduciary claim baldly states that "Defendants were acting as Plaintiff's fiduciary with respect to complying with all laws and regulations;' but no details about the alleged fiduciary relationship are provided. (SOF at Ex. A, ¶31).   While a fiduciary relationship exists when there is an attorney-client relationship as a matter of law, there was no attorney-client relationship between defendants and plaintiff.  (*Supra* at Argument (I)(A)).  Moreover, when representing an LLC, the law does not impose on or extend to an LLC's attorney a fiduciary duty to members of that LLC.  *Kopka*, 821 N.E.2d at 927 (holding that an attorney for a closely-held corporation does not have a fiduciary duty toward individual shareholders as a matter of law); *Hager–Freeman v. Spircoff*, 593 N.E.2d 821, 831 (Ill. App. Ct. 1992)("the attorney for a corporation, even a closely held one, does not have a specific fiduciary duty toward the individual shareholders").  Thus, there is no basis on the evidence to find that defendants owed a fiduciary duty to Reynolds as a matter of law.

"When the relationship between the parties is not one that gives rise to a fiduciary relationship as a matter of law, the party asserting the existence of the [fiduciary] relationship has the burden of pleading and proving such by clear and convincing evidence." *Martin v. State Farm Mutual Auto Ins. Co.*, 808 N.E.2d 47, 52 (Ill. App. Ct. 2004). Here, plaintiff cannot meet the heightened burden of proving any special circumstances that would give rise to the existence of a fiduciary relationship between defendants and plaintiff. Outside of defendants' legal work for the LLCs, plaintiff and defendants had no relationship. As previously discussed, defendants providing legal services to an LLC of which Reynolds is a member does not impose on defendants a fiduciary duty to plaintiff. *In re J.S. II, L.L.C.*, 371 B.R. 311, 323 (Bankr. N.D. Ill. 2007)("Attorneys hired to represent a legal entity owe a fiduciary duty of loyalty to the entity— not the individuals that control it")

"Absent a fiduciary relationship, there is no basis for a cause of action alleging breach of fiduciary duty." *Overbg v. Ill. Farmers Ins. Co.*, 525 N.E.2d 1076, 1084 (Ill. App. Ct. 1988). Accordingly, defendants are entitled to summary judgment because there is no genuine issue of material fact that defendants did not owe plaintiff a fiduciary duty; and, without such a duty, defendants are entitled to judgment as a matter of law on the fiduciary claim.

## II. Defendants are also entitled to judgment on the contract and fiduciary claims because they are duplicative of the professional negligence claim.

In Illinois, "duplicate claims are not permitted." *Neade v. Portes*, 739 N.E.2d 496, 503 (Ill. 2000). Under Illinois law, a breach-of-fiduciary-duty claim and a breach-of-contract claim are subject to dismissal where they duplicate a malpractice claim. *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 808 (N.D. Ill. 2013). A court determines whether a fiduciary or a contract claim is duplicative of a malpractice claim by reviewing the operative facts and injuries alleged in the claims for similarities. *Id.*

11

Plaintiff's fiduciary and contractual claims are based on the same operative facts and allege the same injuries as plaintiff's professional negligence claim:

- IDENTICAL OPERATIVE FACTS: All three claims are based on the same operative facts, which are set out in 16 paragraphs of background allegations. (SOF at ¶38).

- IDENTICAL INJURIES:    All three claims seek to recover the same damages from the alleged malpractice, fiduciary and contract claims. (*Id.*).

Finally, Reynolds confirmed that the fiduciary and contract claims were duplicative of the malpractice claim when he testified that all of his claims were "based on the legal services [Arend] provided to the Paradigm, the Arjent and the Chicago Trading entities." (SOF at Ex. D, 99:2-6).

A review of the Complaint establishes that plaintiff's fiduciary and contract claims are based on the same operative facts and seek the same damages as plaintiff's professional negligence claim. Thus, no genuine issue of material fact exists that the fiduciary and contract claims are duplicative of the malpractice claim and, therefore, should be dismissed as a matter of law. *McMahan*, 938 F. Supp. 2d at 808 (dismissing a breach-of-contract claim against accountants because it was duplicative of a professional negligence claim); *Majumdar*, 653 N.E.2d at 920-21 (finding that a breach-of-contract claim and breach-of-fiduciary claim were so similar to the legal malpractice claim that they were duplicative and subject to dismissal).

## CONCLUSION

For all of the foregoing reasons and the reasons put forth in the motion and statement of material facts, this Court should enter summary judgment on all claims in favor of defendants and grant any other relief that this Court deems just.

Dated:  April 19, 2016

Respectfully submitted,

WILLIAMS MONTGOMERY & JOHN LTD.


By:  /s/  Christina D. Harrison
        One of Its Attorneys
        Christina D. Harrison
        Williams Montgomery & John, Ltd.
        233 S. Wacker Drive, Suite 6100
        Chicago, IL  60606
        T:  (312) 443-3200
        F:  (312) 630-8500
        E-mail: cdh@willmont.com

*Attorneys for Defendants Henderson & Lyman and Douglas Arend*

#1238286

13