# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN REYNOLDS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-cv-7995 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| HENDERSON & LYMAN and | ) | |
| DOUGLAS AREND, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Brian Reynolds ("Plaintiff") brought this diversity suit against Defendants Henderson & Lyman ("H&L") and Douglas Arend ("Arend") (collectively, "Defendants") for negligence, breach of contract, and breach of fiduciary duty. Before the Court is Defendants' motion for summary judgment [57]. For the reasons stated below, Defendants' motion [57] is granted.

## I. Background

### A. Local Rule 56.1

The Court takes the relevant facts primarily from Defendants' Local Rule 56.1 Statement of Material Facts [59] and Reply [63] in support thereof. Plaintiff failed to respond to Defendants' Local Rule 56.1 Statement of Material Facts, and therefore admitted all facts set forth therein. See Local Rule 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710 (7th Cir. 2015) (district court properly deemed admitted facts asserted by defendants as penalty for student's noncompliance with Local Rule 56.1); *Mintjal v. Prof'l Benefit Trust*, 146 F. Supp. 3d 981, 985 (N.D. Ill. 2015) ("the penalty for failing to properly respond to a movant's 56.1(a)

statement is usually summary judgment for the movant (at least if the movant has done his or her job correctly) because the movant's factual allegations are deemed admitted" (internal quotation marks and citation omitted)).

Plaintiff also failed to file his own Statement of Additional Facts. See Local Rule 56.1(b)(3)(C) (requiring non-movant to file a statement "of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon"). Instead, Plaintiff cites in his response brief to certain "relevant evidence" supporting his case. [62] at 5-7. While this does not comply with the Local Rules, the Court will exercise its discretion in the direction of leniency and consider those additional fact statements that otherwise meet the requirements of the local and federal rules. *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) (recognizing that district courts have discretion to require strict compliance with Local Rule 56.1).

**B.  Facts**

Plaintiff is a citizen of Colorado and is not an attorney. Defendant H&L was a law firm and general partnership organized under the laws of Illinois with its principal place of business in Illinois. One of the areas in which H&L provided legal services was financial services. Defendant Arend was a partner at H&L and a licensed Illinois attorney.

In 2005, Plaintiff and Spencer Montgomery ("Montgomery") entered into a joint back office ("JBO") arrangement with Goldman Sachs Execution and Clearing ("GSEC"). A series of LLCs were formed to take advantage of the JBO arrangement: Paradigm Capital Markets, LLC, the broker-dealer; Paradigm Capital Markets Fund LLC, the pool; and Paradigm Capital Futures LLC, the operator of the pool (collectively, the "Paradigm LLCs"). Plaintiff was a managing

member of and had an ownership interest in Paradigm Capital Markets LLC. He and Montgomery handled the day-to-day operation of the Paradigm LLCs.

The Paradigm LLCs were closed down in 2005. In 2006, Paradigm Capital Markets, LLC retained H&L to perform legal services, such as preparing a private placement memorandum. Montgomery made the initial contact with H&L. Montgomery and Plaintiff decided to hire Defendants as counsel for Paradigm Capital Markets, LLC.

In 2007, the Paradigm LLCs' assets and debts were rolled into a new group of LLCs: Arjent Capital Markets LLC, the broker-dealer; Arjent Capital Markets Fund LLC, the pool; and Arjent Capital Advisors LLC, the operator of the pool (collectively, the "Arjent LLCs"). Plaintiff was one of the managing members of and had an ownership interest in Arjent Capital Markets, LLC. Plaintiff and Montgomery handled the day-to-day operations of the Arjent LLCs. Defendants performed the same type of legal services for Arjent Capital Markets LLC that they performed for Paradigm Capital Markets, LLC.

In 2008, three funds were formed to funnel additional capital into the Arjent LLCs: Chicago Trading Managers, LLC, the operator of the pools; Chicago Trading Partners US LLC, the domestic pool; and Chicago Trading Partners International LLC, the offshore pool (collectively, the "Chicago Trading LLCs"). Plaintiff was the managing member, and subsequently a limited member, of Chicago Trading Managers LLC and had an ownership interest in the LLC. Plaintiff performed administrative tasks for the Chicago Trading LLCs. Defendants performed legal services for Chicago Trading Partners US LLC.

In the course of providing services to the broker-dealer LLCs identified above, Arend and an unidentified H&L attorney spoke over the phone with Plaintiff in his role as a representative

3

of the LLCs about regulatory, compliance, and other issues, including disclosures by LLCs. All of the legal fees for Defendants' legal work were invoiced to and paid by the LLCs.

Plaintiff did not retain Defendants as his attorney personally or pay Defendants for any legal work. See [59-4] at 25 (Plaintiff's deposition). Plaintiff has produced no written contract, agreements, or promises between himself and Defendants. Further, H&L never provided or promised to provide legal services to Plaintiff, and no H&L attorney ever met in person with or indicated to Plaintiff that they were personally representing him. See [59-2] at 2-3 (Henderson declaration); [59-4] at 24-25; [59-7] at 11, (Arend deposition). Plaintiff also admitted at his deposition that no one from H&L ever said anything to him that indicated to him that they believed that they were personally representing him, see [59-4] at 25, and (beyond discussion of H&L's work for the LLCs) never made any promises to him personally with regard to legal services, see [59-6] at 1. At the end of the deposition, however, Plaintiff's attorney asked him, "[w]as there ever a point in time where you believed that Mr. Arend was giving you legal advice for you personally?" [62-1] at 11. Plaintiff responded: "Yes, I felt I was getting advice from him personally." *Id.* When further questioned by defense counsel, Plaintiff elaborated that he felt he was getting advice from Arend personally on a conference call when Plaintiff asked whether certain debits and other accounts in which there were losses needed to be disclosed on the LLC's statements. [59-6] at 18. Plaintiff also testified that he was acting as managing member for the LLC when he asked Arend about the disclosures. *Id.*

The Arjent LLCs and the Chicago Trading LLCs ceased operations in 2010. In 2012, the Commodity Futures Trading Commission ("CFTC") filed a complaint against Plaintiff, Montgomery, Chicago Trading Managers, LLC, and Arjent Capital Markets LLC. Plaintiff believes that allegedly faulty advice from Defendants led to the CFTC action. Specifically,

Plaintiff alleges in his complaint that Defendants erroneously advised him that federal law did not require the LLCs to disclose debits in capital accounts, that the LLCs issued confidential offering memoranda that did not disclose debits in capital accounts, and that this led to the CFTC filing a complaint against Plaintiff alleging that he defrauded investors by issuing or causing to be issued false account statements for three commodity pools. In March 2013, a Judgment and Consent Order was entered in the CFTC action that permanently enjoined Plaintiff from trading or associating with anyone who traded futures.

In 2013, Plaintiff brought suit against Defendants for professional negligence (*i.e.*, legal malpractice), breach of contract, and breach of fiduciary duty. All three claims arise out of the legal services that Arend provided to some of the LLCs, are based on the same factual background, and seek the same damages. Currently before the Court is Defendants' motion for summary judgment on all three claims. In his response, Plaintiff stipulates to the dismissal of his breach of fiduciary duty claim. See [62] at 11.

## II.    Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of

Plaintiff alleges in his complaint that Defendants erroneously advised him that federal law did not require the LLCs to disclose debits in capital accounts, that the LLCs issued confidential offering memoranda that did not disclose debits in capital accounts, and that this led to the CFTC filing a complaint against Plaintiff alleging that he defrauded investors by issuing or causing to be issued false account statements for three commodity pools. In March 2013, a Judgment and Consent Order was entered in the CFTC action that permanently enjoined Plaintiff from trading or associating with anyone who traded futures.

In 2013, Plaintiff brought suit against Defendants for professional negligence (*i.e.*, legal malpractice), breach of contract, and breach of fiduciary duty. All three claims arise out of the legal services that Arend provided to some of the LLCs, are based on the same factual background, and seek the same damages. Currently before the Court is Defendants' motion for summary judgment on all three claims. In his response, Plaintiff stipulates to the dismissal of his breach of fiduciary duty claim. See [62] at 11.

## II.    Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of

material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013) (citation omitted).

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250. Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252.

### III.  Analysis

This case arises under the Court's diversity jurisdiction. See [1] at 2. Where, as here, "neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits." *Indiana Ins. Co. v. Pana Cmty. Unit Sch. Dist. No. 8*, 314 F.3d 895, 900 (7th Cir. 2002); see also *Auto. Fin. Corp. v. Smart Auto Ctr., Inc.*, 334 F.3d 685, 688 (7th Cir. 2003) (court sitting in diversity applies "the law of the forum state"). This Court sits in Illinois and therefore will apply Illinois substantive law to decide Defendants' motion.

The central issue on summary judgment is whether an attorney-client relationship was ever formed between Plaintiff and Defendants, such that Defendants owe Plaintiff a duty of care

or a fiduciary duty. In Illinois, "[w]hether an attorney-client relationship exists, and thus whether the attorney owes a duty to a particular person, is a question of law." *Meriturn Partners, LLC v. Banner & Witcoff, Ltd.*, 31 N.E.3d 451, 456 (Ill. App. 2015) (citing *Blue Water Partners, Inc. v. Mason,* 975 N.E.2d 284, 295 (Ill. App. 2012)); see also *Simon v. Wilson*, 684 N.E.2d 791, 801 (Ill. App. 1997) (in a legal malpractice action, "[t]he existence of a duty presents a question of law to be determined by the trial court").

Plaintiff asserts that the existence of an attorney-client relationship is a question of fact. However, all of the case law that Plaintiff cites in support of his position is from outside of Illinois and therefore is inapplicable here. See [62] at 3. Of course, the Court recognizes that in some cases "findings of fact . . . must be made concerning the formation of the attorney-client relationship to, for example, resolve disputes concerning communications, acts undertaken, or the parties' respective understandings." *Meriturn Partners*, 31 N.E.3d at 456. In this case, however, the relevant facts are all undisputed. Therefore, the Court will determine as a matter of law whether an attorney-client relationship was formed between Plaintiff and Defendant.

### A. Negligence/Legal Malpractice

While Plaintiff titles his first claim as a claim for negligence, see [1] at 4, all of the parties treat the claim as one for legal malpractice. See [58] at 5; [62] at 1. Therefore, the Court will do the same. To prevail on a legal malpractice claim under Illinois law, the plaintiff must plead and prove (1) "the existence of an attorney-client relationship"; (2) "the breach of a duty owed by virtue of that relationship," and (3) "that such negligence was the proximate cause of injury or of loss to the client." *Alper v. Altheimer & Gray*, 257 F.3d 680, 684 (7th Cir. 2001); see also *Stevens v. McGuireWoods LLP*, 43 N.E.3d 923, 927 (Ill. 2015).

The relationship "'is only created by a retainer or an offer to retain or a fee paid.'" *People v. Simms*, 736 N.E.2d 1092, 1117 (Ill. 2000) (quoting *Corti v. Fleisher,* 417 N.E.2d 764, 768 (Ill. App. 1981)). While an express agreement is not required, *In re Marriage of Stephenson*, 955 N.E.2d 618, 627 (Ill. App. 2011), "[t]he attorney must indicate an acceptance of the authority to work on behalf of the client, and the client must authorize the attorney to work on his behalf" in order for an attorney-client relationship to be formed. *Wildey v. Paulsen*, 894 N.E.2d 862, 868 (Ill. App. 2008); see also *Simon*, 684 N.E.2d at 801.

In addition, even where the evidence does not support the existence of an attorney-client relationship, "if a nonclient is an intended third-party beneficiary of the relationship between the client and the attorney, the attorney's duty to the client may extend to the nonclient as well." *In re Estate of Powell*, 12 N.E.3d 14, 20 (Ill. 2014). "The key consideration is whether the attorney is acting at the direction of or on behalf of the client to benefit or influence a third party." *Id.* "[F]or a nonclient to succeed in a negligence action against an attorney" based on the intended third-party beneficiary theory, the nonclient "must prove that the *primary purpose* and intent of the attorney-client relationship itself was to benefit or influence the third party." *Pelham v. Griesheimer*, 440 N.E.2d 96, 100 (Ill. 1982) (emphasis added); see also *Estate of Powell*, 12 N.E. 3d at 20; *Roppo v. Travelers Companies*, 100 F. Supp. 3d 636, 647 (N.D. Ill. 2015). In other words, "an attorney will owe a duty to a third party only where the attorney was hired by the client specifically for the purpose of benefitting that third party." *Reddick v. Suits*, 960 N.E.2d 1182, 1190 (Ill. App. 2011) (citing *Pelham*, 440 N.E. 2d at 548). "Proof of intent to benefit or influence a third party must be specific," and therefore "[a] claim that the third party is a shareholder in [a] corporation is by itself insufficient to establish a duty on the part of the

8

attorney for the corporation in favor of the shareholder third-party." *Blue Water Partners*, 975 N.E.2d at 295.

Based on the undisputed facts presented by the parties, the Court concludes that Plaintiff cannot establish that he had a direct attorney-client relationship with Defendants. Plaintiff has produced no written contract suggesting that he ever hired Defendants as his personal attorneys, and Plaintiff admitted at his deposition that he "did not at any time retain Henderson & Lyman as [his] attorney personally." [59-4] at 25. It is also undisputed that Plaintiff did not personally pay Defendants for any legal services. [59] at 5. These facts indicate that no attorney-client relationship was formed. See *Simms*, 736 N.E.2d at 1117; *In re Marriage of Newton*, 955 N.E.2d 572, 589 (Ill. App. 2011) ("The relationship of attorney and client is a contractual one and is created by a retainer or an offer to retain or fee paid.").

Further, Plaintiff does not assert that he ever authorized Defendants to work on his own personal behalf, rather than on behalf of the LCCs. *Wildey*, 894 N.E.2d at 868. Plaintiff also admitted at his deposition that no one from H&L ever said anything to him indicating that H&L believed that it was personally representing him, [59-4] at 25, or made any promises to him personally with regard to legal services, [59-6] at 1. While Plaintiff also stated later in his deposition that he "felt [he] was getting advice from [Arend] personally," he does not identify any facts from which he inferred his understanding. [62-1] at 11. Instead, he acknowledged that the sole conversation on which this understanding was based concerned the contents of the LLC's disclosures. *Id.* And there is no suggestion anywhere in the record that Defendants ever advised Plaintiff about his own personal liability for the disclosures.

This case is similar in many ways to *Blue Water Partners*, on which Defendants rely in their briefs and Plaintiff fails to discuss. There the court found that there was "unequivocal

9

evidence that no attorney-client relationship ever arose" between the plaintiff, an officer and shareholder of a corporation, and the corporation's outside law firm, where the officer/shareholder admitted that he did not personally retain the law firm, did not pay the law firm, was not told anything by anyone from the law firm that led him to believe that he was being personally represented, and did not consider the law firm to be his "personal attorney." *Blue Water Partners*, 975 N.E.2d at 295. Similarly, in this case, Plaintiff admits that he did not retain Defendants to represent him personally, did not pay Defendants, and was not told by Defendants that they represented him personally, and Plaintiff has presented no evidence supporting the theory that Defendants were his personal attorneys. See [58] at 6-7.

The Court further concludes that Plaintiff cannot establish that he was an intended third-party beneficiary of the attorney-client relationship between Defendants and the LLCs. Under Illinois law, an "attorney for a corporate client owes his duty to the corporate entity, not its individual shareholders, officers, or directors." *Majumdar v. Lurie*, 653 N.E.2d 915, 918 (Ill. 1995); see also *Hager-Freeman v. Spircoff*, 593 N.E.2d 821, 831 (Ill. App. 1992) ("the attorney for a corporation, even a closely held one, does not have a specific fiduciary duty toward the individual shareholders"). Plaintiff has failed to overcome the presumption that Defendants represent the LLCs, rather than their shareholders, officers, or directors, because he has offered no specific proof that the "primary purpose" of the representation was to benefit or influence Plaintiff. *Blue Water Partners*, 975 N.E.2d at 295. Plaintiff does not even argue that this is the case; the furthest he goes is to assert that the facts show "an intent to benefit Plaintiff directly." [62] at 10.

That alone is insufficient to establish liability for legal malpractice based on an intended third-party beneficiary theory. In *Reddick*, for example, the Illinois Appellate Court held on

summary judgment that an attorney who failed to reinstate an administratively dissolved corporation did not owe a duty to the corporation's directors and officers, and therefore the directors and officers could not maintain a malpractice action against the attorney. *Reddick*, 960 N.E.2d at 1190. The court reasoned that the attorney was acting to enable the corporation to conduct business and facilitate the sale of its assets, not to insulate the directors and officers from potential liability. *Id.* at 1194. The court reached this conclusion despite the fact that the directors and officers were exposed to personal liability and "most at risk" if the reinstatement failed. *Id.* The court explained that "[s]imply because the third parties here, plaintiffs, were at risk of personal liability does not transform the incidental benefits of [the attorney's] representation of [the dissolved corporation] into direct and intended benefits for plaintiffs." *Id.* Similarly, the evidence brought forward by the parties here shows, at most, that the fact that Plaintiff "would receive the benefit" of minimizing his own exposure to enforcement actions brought by government regulators or self-regulating organizing ("SROs") "was incidental to the goal" of ensuring that the LLCs complied with their regulatory duties, including making required disclosures. *Id.*

The only support for Plaintiff's intended third-party beneficiary theory is an expert report from Law Professor M. Todd Henderson. See [62] at 10-11; [62-2]. Henderson's report focuses mainly on whether Defendants provided faulty legal advice to Plaintiff. At the end of the report, Henderson also opines that Defendants should owe a duty of care to Plaintiff because governmental regulators and SROs in the financial services industries punish entities' misbehavior primarily through the revocation of individual licenses to practice in the industry. [62-2] at 18. According to Henderson, even though fines may be imposed against entities as "a

secondary method of control," this enforcement mechanism is less important because "firms are often judgment proof, and, at least in the case of SROs, they lack the legal power to collect." *Id.*

Pursuant to Rules 702 and 704 of the Federal Rules of Evidence, Henderson's opinion on the ultimate legal issue of whether Defendants owed Plaintiff a duty of care is not the proper subject of expert testimony. These rules "prohibit experts from offering opinions about legal issues that will determine the outcome of a case." *King v. Kramer*, 763 F.3d 635, 646 (7th Cir. 2014) (citing *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 648 (7th Cir. 2012)).

Even if Henderson's opinion were admissible, however, his conclusion that Defendants owe a duty of care to Plaintiff is not supported by his analysis. Nothing in the report suggests that the LLCs' primary purpose in retaining, seeking advice from, and paying Defendants for advice concerning regulatory, compliance, and other issues, including disclosures by LLCs, was to protect *Plaintiff* from potential personal liability. Instead, the undisputed evidence shows that the LLCs hired Defendants to prepare private placement memoranda and advise them regarding regulatory, compliance, and other issues, including disclosures. While Plaintiff ultimately faced personal liability as a result of Defendants' allegedly bad advice, under the applicable case law this standing alone is insufficient to demonstrate that Plaintiff was an intended third-party beneficiary of the attorney-client relationship between Defendants and the LLCs. See *Reddick*, 960 N.E.2d at 1194; cf. *Pelham*, 440 N.E.2d at 101 (attorney hired primarily for purpose of obtaining divorce, property settlement and custody of minor children for wife, and not to represent her children's interests, owed no duty of care to children which was breached by alleged failure of attorney to notify husband's employer or insurance company of divorce-decree provision requiring husband to maintain his children as prime beneficiaries in his life insurance

policies or failure to advise wife to notify her husband's employer or insurance company of the provision, since children were, at best, only incidental beneficiaries).

For these reasons, the Court concludes that there are no material questions of disputed fact concerning whether there was a direct attorney-client relationship between Plaintiff and Defendants or whether Plaintiff was an intended third-party beneficiary of the attorney-client relationship between Defendants and the LLCs. The undisputed evidence shows that Defendants were not Plaintiff's personal attorneys, that Plaintiff was not an intended third-party beneficiary of the attorney-client relationship between Defendants and the LLCs, and therefore that Defendants did not owe Plaintiff personally a duty of care or a fiduciary duty. Therefore, Defendants are entitled to summary judgment on Plaintiff's claim for legal malpractice/negligence.

### B. Breach of Contract

Defendants argue that Plaintiff's claims for breach of contract should be dismissed for at least two reasons. First, Defendants argue that the breach of contract claim is duplicative of Plaintiff's negligence/legal malpractice claim and therefore subject to dismissal under Illinois law. Plaintiff does not offer any response to this argument.

In Illinois, "[w]here a plaintiff brings claims for legal malpractice and breach of contract based upon the same alleged conduct on the part of the attorney and the claims are not pleaded in the alternative, dismissal of the breach of contract claim as duplicative is appropriate." *Nettleton v. Stogsdill*, 899 N.E.2d 1252, 1268 (Ill. App. 2008); see also *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 744 (7th Cir. 2004) (deficient legal malpractice claim against law firm could not be saved by being recharacterized as claim for breach of contract or breach of fiduciary duty); *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d

795, 808 (N.D. Ill. 2013) (under Illinois law "[a] breach of contract claim is . . . subject to dismissal where it duplicates a malpractice claim").

Plaintiff's claim for breach of contract is not pled in the alternative. It is also undisputed that the breach of contract claim is based on the same operative facts—Defendants' allegedly erroneous advice that federal law did not require the LLCs to disclose debits in capital accounts—and seeks the same damages as the legal malpractice claim. See [59] at 38. Therefore, the breach of contract claim is duplicative and will be dismissed.

In any event, even if the breach of contract claim were not duplicative, it fails for the same reasons that the legal malpractice claim fails. Plaintiff has come forward with no evidence that a contractual attorney-client relationship was ever formed between Plaintiff and Defendants or that Plaintiff was an intended third-party beneficiary of Defendants' contract with the LLCs.

For these reasons, Defendants are entitled to summary judgment on Plaintiff's claim for breach of contract.

## IV. Conclusion

For the reasons stated above, the Court grants Defendants' motion for summary judgment [57]. Final judgment will be entered in favor of Defendants and against Plaintiff on Plaintiff's claims for legal malpractice/negligence, breach of contract, and breach of fiduciary duty. This ruling disposes of all claims in the case.

Dated: November 15, 2016

_____
Robert M. Dow, Jr.
United States District Judge